## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEMAR EDWARDS,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **NORTHAMPTON COUNTY, NORTHAMPTON COUNTY COUNCIL MEMBERS 1-9, NORTHAMPTON COUNTY EXECUTIVE, NORTHAMPTON COUNTY PRISON, PRIMECARE INC., TODD L. BURKIRK, MICHAEL BATEMEN, THERESA NAGLE, JENNIFER MROZ, NANCY CUNNINGHAM, VICTORIA GESSNER, EMILIA CAPUTO, and JENNIFER KELLER,** | **NO.  12-5323** |
| **Defendants.** | |

**DuBois, J.**                                                               **April 29, 2016**

## M E M O R A N D U M

### I.      INTRODUCTION

Plaintiff Demar Edwards ("plaintiff" or "Edwards") asserts claims under 42 U.S.C.

§ 1983 arising out of a methicillin-resistant *Staphylococcus aureus* ("MRSA") infection that he

allegedly contracted as a pretrial detainee at Northampton County Prison ("NCP"). Edwards

claims that his MRSA infection was caused by his placement in an unclean cell, and by the

prison's failure to implement and enforce appropriate MRSA precautions. Edwards also claims

that he was deprived of adequate medical treatment for the MRSA infection.

Plaintiff names as defendants Northampton County, Northampton County Council

Members 1–9, the Northampton County Executive, Northampton County Prison, Warden Todd

L. Buskirk,[1] and Deputy Warden Michael Batemen (referred to collectively as the "Northampton defendants"). Also named as defendants are PrimeCare, Inc. ("PrimeCare"), the company contracted to provide healthcare services at NCP, and several PrimeCare employees: Theresa Nagle, M.A., Jennifer Mroz, P.A., Nancy Cunningham, R.N., Emilia Caputo, R.N., Jennifer Keller, R.N., and Victoria Gessner, M.D. (referred to collectively as the "medical defendants").

Presently before the Court are separate Motions for Summary Judgment filed by the Northampton defendants and the medical defendants. For the reasons set forth below, the Court grants both Motions.

## II.    BACKGROUND

### A.    FACTUAL BACKGROUND

The relevant facts are set forth below. The facts are not disputed except as otherwise noted. Edwards's medical treatment is summarized below, but addressed in more detail in the discussion section, Part IV.B.

In October 2003, before his incarceration at NCP, Edwards underwent surgery to treat an injury to his right leg and had pins and screws inserted in his right ankle. Northampton Defs.' Statement of Undisputed Facts ¶ 14–16; Pl.'s Statement of Undisputed Facts ¶ 3. On August 11, 2010, a criminal Complaint was filed against Edwards in the Court of Common Pleas of Northampton County, and a warrant was issued for his arrest. Northampton Defs.' Br. Ex. D.

Following his arrest, plaintiff was held at NCP as a pretrial detainee, beginning on September 20, 2010. Pl.'s Statement of Undisputed Facts ¶ 4. While showering on October 1, 2010, he noticed a large discolored spot on the inside of his right ankle, near the site of his 2003 surgery, that was sore to the touch.

---

[1] Todd L. Buskirk is misidentified in the caption as "Todd L. Burkirk."

On October 13, 2010, plaintiff was examined by defendant Mroz, who ordered daily dressing changes. Medical Defs.' Statement of Undisputed Facts ¶ 27. Mroz also took a culture of the wound, and the lab studies from the culture were reported positive for MRSA on October 17, 2010. *Id.* ¶ 26. On October 18, 2010, Edwards was placed on "Contact Isolation," which required "[s]tyrofoam and paper food trays, clothing separated in red laundry bags, . . . gloves when outside cell, antibacterial soap, no washcloths, daily showers and then immediately clean shower with bleach solution, laundering of towels/linens in chlorine bleach weekly, phone and cell doors clean three times per day with bleach solution, and daily clothing changes." *Id.* ¶ 28. The parties dispute the extent to which these precautions were implemented.

Plaintiff's bandage dressing was changed daily between October 18, 2010 and October 27, 2010. *Id.* ¶ 29–33. On October 28, 2010, contact isolation was discontinued. *Id.* ¶ 34. Plaintiff's bandage dressing was changed on October 29, 2010, but was not changed again until he was seen by Nurse Janice Fischer[2] on November 13, 2010. *Id.* ¶¶ 35–36. Plaintiff's bandage dressing was changed on November 14, 2010. *Id.* ¶ 37.

On November 15, 2010, Edwards was seen by Mroz, who noticed that the wound on Edwards's right ankle was "open." *Id.* ¶ 38. She took another culture of the wound, restarted the MRSA protocol, and reinstated contact isolation. *Id.* ¶ 38. The lab studies were reported positive for MRSA on November 18, 2010. *Id.* ¶ 40.

Daily bandage changes were resumed until December 23, 2010. *Id.* ¶ 47. On December 24, 2010, plaintiff was examined and found to have two new lesions on his lower right leg. *Id.* MRSA protocol was restarted that same date. *Id.* A culture of the wound was taken, and the lab studies from the culture were reported positive for MRSA on December 30, 2010. *Id.* ¶ 48.

---

[2] Fischer is not a party in this case.

Plaintiff was seen by Dr. Victoria Gessner that same date, who ordered x-rays of Edwards's right ankle. *Id.* ¶¶ 52, 54. The order for daily wound changes was continually renewed, and plaintiff received daily care from December 25, 2010 through April 22, 2011. *Id.* ¶¶ 51, 53, 55, 57, 59, 61, 64, 66, 68, 70, 72.

On April 22, 2011, the order for dressing changes expired. *Id.* ¶ 73. That same date, plaintiff filed a Confidential Grievance Form to complain that the medical department had not called him for a bandage change. *Id.* ¶ 74. Daily bandage changes were resumed on April 25, 2011, and continued through April 28, 2011. *Id.* ¶ 75. On April 28, Mroz determined that further bandage changes were no longer necessary and provided plaintiff with Band-Aids. *Id.* ¶ 76. On May 3, 2011, plaintiff contacted Warden Buskirk through a Department of Corrections Inmate Request form to complain that he was being "den[ied]" medical treatment. *Id.* ¶ 77; Medical Defs. Br. Ex. L. Warden Buskirk "forwarded" Edwards's grievance "to Medical for review." Medical Defs. Br. Ex. L.

On May 13, 2011, Dr. Gessner examined plaintiff and observed a wound with discharge on his right ankle. She ordered resumption of daily dressing changes. Medical Defs.' Statement of Undisputed Facts ¶ 79. Plaintiff was tested for MRSA again on May 23, 2011. *Id.* ¶ 85. The lab studies were reported positive for MRSA on May 27, 2011. Thereafter, the orders for daily bandage changes were continually renewed through July 14, 2011. *Id.* ¶¶ 87, 88, 90, 94, 96, 100, 102, 104, 106, 108, 110.

In late June 2011, plaintiff "passed out" from the infection. Edwards Dep. 126:17–18. On July 15, 2011, he was admitted to St. Luke's Hospital. *Id.* 127:19–21. At St. Luke's plaintiff underwent multiple surgeries to treat the infection. Pl.'s Statement of Undisputed Facts ¶ 8; Medical Defs.' Statement of Undisputed Facts ¶ 111–115. The infection was so severe that the

4

surgeons considered amputating part of plaintiff's leg. Edwards Dep. 128:6–8. But instead, on July 15, 2011, the surgeons "cut out a large piece of flesh" from Edwards's muscle and removed the pins and screws from his ankle. *Id.* 128:15–17; Medical Defs.' Statement of Undisputed Facts ¶ 111. On July 17, 2011, doctors installed a pump to remove blood and pus from the wound. Edwards Dep. 128:20–25; Medical Defs.' Statement of Undisputed Facts ¶ 112. This procedure was repeated on July 22, 2011. Medical Defs.' Statement of Undisputed Facts ¶ 114. On July 25, 2011, plaintiff underwent reconstructive plastic surgery in which skin was removed from his inner thigh for a skin graft. Medical Defs.' Statement of Undisputed Facts ¶ 115. On July 29, 2011, Edwards was discharged from St. Luke's Hospital and returned to NCP. *Id.* ¶ 116.

On November 3, 2011, Edwards was found guilty of three counts of murder in the first degree and three counts of conspiracy to commit murder in the first degree in the Court of Common Pleas of Northampton County. Northampton Defs.' Br. Ex. D. He was sentenced to a term of life imprisonment without parole. *Id.* On November 16, 2011, plaintiff was transferred from NCP to SCI Graterford. Medical Defs.' Statement of Undisputed Facts ¶ 177.

### B. PROCEDURAL BACKGROUND

Edwards filed an application to proceed in district court *in forma pauperis* on September 17, 2012. The Court granted plaintiff's application by Order dated November 8, 2012. His *pro se* complaint was filed that same day. Plaintiff obtained counsel, Lawrence Wood, who entered his appearance on April 2, 2013. The Court granted leave to file an amended complaint by Order dated April 8, 2013.

The medical defendants filed a motion to dismiss the Amended Complaint on May 4, 2013. By Order dated June 20, 2013, the Court granted the motion without prejudice as to the claims against defendants Nagle, Caputo, Keller, and Gessner on the ground that the Amended

Complaint did not allege that these defendants played any role in Edwards's care or created any policy that adversely affected Edwards. Edwards filed a second amended complaint on July 15, 2013 in which he pled additional facts involving defendants Nagle, Caputo, Keller, and Gessner.

The Northampton and medical defendants filed motions for summary judgment on June 27, 2014. On July 22, 2014, plaintiff moved for an extension of time to complete discovery in order to obtain the testimony of an expert. The Court granted plaintiff's motion by Order dated August 7, 2014, and denied those motions for summary judgment without prejudice by Order dated August 26, 2014.

At the close of discovery, the medical defendants and Northampton defendants again filed motions for summary judgment on April 29, 2015 and May 1, 2015, respectively (the "Motions for Summary Judgment"). Oral argument was held on April 4, 2016. Those Motions for Summary Judgment are now ripe for decision.

## III.   LEGAL STANDARD

### A.   SUMMARY JUDGMENT

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A dispute of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d

6

Cir. 2007). But a motion for summary judgment should be granted where "the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986)). To survive a motion for summary judgment, "the non-moving party must show specific facts such that a reasonable jury could find in its favor . . . ." *Id.* "[M]ere allegations are insufficient." *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 265 (3d Cir. 2014).

### B.  CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a § 1983 claim, plaintiff must demonstrate that defendants, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. 42 U.S.C. § 1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). Typically, a prisoner challenging the conditions of his confinement or the adequacy of his medical treatment asserts claims under the Eighth Amendment's prohibition of cruel and unusual punishment. In this case, however, the Eighth Amendment does not apply because, at all relevant times, plaintiff was a pretrial detainee—not a convicted prisoner. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (discussing how the Eighth Amendment applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law"). Instead, plaintiff's claims are evaluated under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

The United States Court of Appeals for the Third Circuit has concluded that "[t]he parameters of [a pretrial detainee's Fourteenth Amendment Due Process] interest are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." *Keller v. Cty. of Bucks*, 209 F. App'x 201, 205 (3d Cir. 2006) (quoting *Surprenant v. Rivas*, 424 F.3d 5,

18 (1st Cir. 2005)); *accord Fillebrown v. Zettlemoyer*, No. 95-cv-4394, 1996 WL 460051, at *2 (E.D. Pa. Aug. 9, 1996) (DuBois, J.). Accordingly, the Court applies Eighth Amendment analysis to evaluate plaintiff's § 1983 Due Process claims.

## IV.   DISCUSSION

Plaintiff asserts two types of claims under § 1983. First, he claims that he contracted a dangerous MRSA infection as a result of the unconstitutional conditions of confinement at NCP. Second, he claims that he was deprived of adequate medical treatment for the MRSA infection. For the reasons that follow, the Court grants the defendants' Motions for Summary Judgment as to both claims.

### A.   CONDITIONS OF CONFINEMENT CLAIMS

Edwards advances two arguments based on the conditions of confinement: the claims that his MRSA infection was caused by (1) defendants' reckless disregard for the unclean conditions of his cell, and (2) defendants' reckless failure to implement and enforce adequate MRSA precautions. The Court rejects both arguments.

#### 1.     Legal Standard

"In order for conditions of confinement to be unconstitutional . . . the evidence must reveal widespread deprivation of the 'minimal civilized measures of life's necessities.'" *Keller v. Cnty. of Bucks*, 209 F. App'x 201, 205 (3d Cir. 2006) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). To be liable, an individual defendant must act with "deliberate indifference" as to those conditions. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Deliberate indifference is established if the defendant (1)  "knows that an inmate faces a substantial risk of serious harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

"[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

### 2. Claims Against Warden Buskirk

The Court addresses both of plaintiff's arguments: first, Buskirk's reckless disregard for the unclean conditions of Edwards's cell, and second, Buskirk's reckless failure to implement and enforce adequate MRSA precautions. The Court rejects both of plaintiff's arguments and grants the Northampton defendants' Motion for Summary Judgment as to these conditions of confinement claims asserted against Buskirk.

(a) *Edwards's Cell*. Edwards testified that he was placed in a "filthy cell." Edwards Dep. at 92:5. "There was urine all over the toilet, there was food all over the floor. It was very sticky in the cell . . . ." *Id.* at 92:5–7. The Court determines that Edwards's claim against Buskirk regarding cell conditions fails for two reasons. First, there is insufficient evidence of record that Buskirk knew about the alleged conditions. Second, there is no evidence of record that Buskirk or the cell conditions caused Edwards's MRSA infection.

The first prong of the deliberate-indifference test requires evidence that Buskirk knew Edwards faced a serious risk of harm from the conditions of his confinement. However, there is no evidence that Buskirk had such knowledge. Although Edwards submitted several letters to Buskirk complaining of his MRSA infection and healthcare, there is no record of any complaint mentioning unclean cell conditions, Letter to Todd L. Buskirk dated May 3, 2011, Northampton Defs.' Br. Ex. A-6; Letter to Todd L. Buskirk dated November 17, 2010, *Id.* Ex. F, and there is no other evidence that Buskirk had knowledge of the conditions of Edwards's cell. *See McCluskey v. Vincent*, 505 F. App'x 199, 204 (3d Cir. 2012) ("[T]here is no evidence that any

defendant knew that McCluskey was being given a bed once used by a prisoner with MRSA."). Without such evidence, the first prong of the deliberate indifference test cannot be satisfied.

Likewise, there is no evidence of causation. "Although the question of proximate cause must often be submitted to the trier of fact, summary judgment is proper if the record cannot reasonably support a finding of proximate cause, and in prior § 1983 cases, we have upheld summary judgment on this basis." *Tallman v. Barnegat Bd. of Educ.*, 43 F. App'x 490, 498–99 (3d Cir. 2002). This is a case in which causation cannot be established on the record presented.

The Court is unable to infer, absent expert testimony, that the conditions of Edwards's cell caused his MRSA infection. *See Hargis v. Atl. Cty. Justice Facility*, No. 10-cv-1006, 2014 WL 1713461, at *8 (D.N.J. Apr. 28, 2014) ("Without expert testimony substantiating a causal link between the allegedly unconstitutional conditions at ACJF and Plaintiff's MRSA diagnosis, Plaintiff is unable to show a cognizable injury."); *McCluskey v. Vincent*, 09-cv-215, 2011 WL 2214078, at *1 (W.D. Pa. June 7, 2011), *aff'd*, 505 F. App'x 199 (3d Cir. 2012) ("Plaintiff offers no evidence regarding how or when he contracted MRSA, let alone that it resulted from unfit prison conditions."); *Malles v. Lehigh Cty.*, 639 F. Supp. 2d 566, 581 (E.D. Pa. 2009) ("There is indeed no evidence that more rigorous cleaning or any other measures would—or could—have prevented or reduced the likelihood of [MRSA] infection.").

Plaintiff argues that the doctrine of *res ipsa loquitur* supports an inference of causation. The Court rejects this argument because "[r]es ipsa loquitur has no application in a civil rights case." *Gonzalez v. City of Fresno*, 2009 WL 2208300 at *8 (E.D. Cal. July 23, 2009); *see also Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) ("[T]he standard of care in this area is not negligence, which is why *res ipsa loquitur* does not apply[.]" (internal citation omitted)); *Wellman v. Faulkner*, 715 F.2d 269, 276 (7th Cir. 1983).

There is insufficient evidence of record to support plaintiff's claim against Buskirk based on unclean cell conditions. The Court thus grants the Northampton defendants' Motion for Summary Judgment as to that claim.

(b) *MRSA Precautions.* Plaintiff also claims that Buskirk recklessly disregarded a threat to all NCP inmates by failing to implement and enforce adequate MRSA precautions. Specifically, Buskirk testified in his deposition that he received reports around January 24, 2009 that other NCP prisoners had contracted MRSA, although he did not know how many. Northampton Defs.' Br. Ex. I ("Buskirk Dep."), at 11:4–6. He admitted that he never commissioned a "study" to ascertain the causes of MRSA transmission. *Id.* at 14:1–5. Based on that testimony, plaintiff asserts that Buskirk knew of MRSA infections at NCP and disregarded the risk of future infections. The Court rejects this argument.

To be liable, Buskirk must have been "subjectively aware that the policies in effect were so inadequate that they resulted in the inmates being exposed to a substantial risk of contracting infection by MRSA." *Gallo v. Washington Cty.*, 363 F. App'x 171, 174 (3d Cir. 2010). In addition, Buskirk must have "made a deliberate choice not to take reasonable steps to address [that risk]." *Id.*; *see also Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

In this case, Buskirk enhanced the prison's MRSA precautions in 2009, before Edwards arrived at NCP. First, Buskirk "sent a group of individuals to Bucks County to look at their laundry system." Buskirk Dep. at 8:23–24. Following that, Buskirk consulted Robert Powitz, a sanitation expert, and made several changes to the laundry system based on Powitz's advice. *Id.* at 8:22–9:3. Specifically, he replaced canvas laundry bins with larger plastic bins, *id.* at 8:7–17, implemented a new scale system to ensure that the laundry machines were loaded to appropriate

capacities, and introduced larger laundry bags—which "gave more surface area for the water detergents to get into the clothes and also to dry them properly." *Id.* at 13:7–15.

In addition to the upgrades to the laundry system, Buskirk testified that NCP implemented a policy of having the manufacturers of laundry, kitchen, heating, and cooling equipment conduct regular inspections to ensure that "the settings on the equipment were correct, that they were functioning properly[.]" *Id.* at 12:20–13:2.

Thus, even though Buskirk had "actual knowledge . . . of the existence of MRSA and that a few inmates in the facility may have been infected," *Gallo*, 363 F. App'x at 174, the introduction of new policies in 2009 demonstrates that Buskirk was not indifferent; he took "reasonable steps," *id.*, to redress the issue based on the advice of an expert. There is no evidence that, at the time Edwards arrived at NCP, "defendants were aware, or should have been aware, that their remedial and preventative measures were inadequate" following the implementation of new policies in 2009. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 428 (3d Cir. 2006). For example, there is no evidence of any other inmate diagnosed with MRSA following the implementation of the new policies. *See Oliver v. Bucks Cty. Corr. Facility-Warden*, 181 F. App'x 287, 288–89 (3d Cir. 2006) (holding that a prison warden was not on notice of a "substantial risk" of MRSA, despite a history of MRSA outbreaks, where "there were no MRSA diagnoses in the month before [plaintiff's] arrival").

Plaintiff insists, however, that Buskirk disregarded the risk of MRSA at NCP because he did not authorize a "study." However, there is no requirement based on the Constitution that Buskirk commission such a study. On the present record, no reasonable jury could conclude that the absence of a study amounts to a "*deliberate choice* not to take reasonable steps to address a substantial risk of serious harm to an inmate." *Gallo*, 363 F. App'x at 174 (emphasis added).

Edwards further alleges that the prison did not abide by its MRSA protocols. He testified in his deposition that he was not given gloves, Edwards Dep. at 124:15–19, and the proper disposal of his sheets "started right before [he] went and got [his] surgery." *Id.* 125:1–2; *see also id.* at 124:20–23. But these allegations do not support a claim against Buskirk because there is no evidence that Buskirk was "subjectively aware" of any deficiencies in the implementation of the MRSA protocol. *Gallo*, 363 F. App'x at 174. There is no mention of gloves or laundry in the letters submitted to Buskirk, Letter to Todd L. Buskirk dated May 3, 2011, Northampton Defs.' Br. Ex. A-6; Letter to Todd L. Buskirk dated November 17, 2010, *Id.* Ex. F, and there is no other evidence that Buskirk had such knowledge.

In addition, there is no evidence that Edwards's grievances regarding gloves and sheets rendered the MRSA protocol "so inadequate that [it] resulted in the inmates being exposed to a substantial risk of contracting infection by MRSA." *Gallo*, 363 F. App'x at 174. Expert testimony is required to establish that the alleged deficiencies in the MRSA protocol, as implemented, caused the perpetuation or exacerbation of his infection, and there is none. Accordingly, the Court grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claim asserted against Buskirk based on NCP's MRSA precautions.

### 3.       Claims Against Deputy Warden Bateman

The Court grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claims asserted against Deputy Warden Bateman. There is no evidence of record that Bateman had knowledge of the conditions of plaintiff's cell, or had knowledge that the prison's MRSA policies posed a "substantial risk of serious harm" to plaintiff. *Farmer*, 511 U.S. at 828.

The only evidence regarding Bateman is Edwards's deposition testimony. Edwards complained to Bateman that the medical department "stopped my treatment," Edwards Dep. at 55:1–7, but did not mention MRSA, when he became infected, the seriousness of the infection, or the condition of his cell. *See id.* at 56:19–24, 57:14–19. In short, there is no evidence that Bateman knew of the condition of Edwards's cell or Edwards's claim that the condition of his cell caused his MRSA infection. Nor is there any evidence that Bateman knew about any deficiencies in the prison's MRSA policies. The Court therefore grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claims asserted against Bateman.

### 4.      Claims Against Northampton County

The Court grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claims asserted against Northampton County because there is no evidence of record to support plaintiff's *Monell* claim.

A municipality is liable under Section 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). Where a plaintiff alleges that the municipality failed to act—in this case, by turning a blind eye to prison conditions—*Monell* is satisfied if the final decision-maker "either deliberately chose not to pursue . . . alternatives" known to prevent the constitutional violations, "or acquiesced in a long-standing policy or custom of inaction in this regard." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1064 (3d Cir. 1991)); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

14

In this case, there is no dispute that Warden Buskirk is a final decision-maker. However, there is no evidence that Buskirk was deliberately indifferent or acquiesced in a "custom of inaction." To the contrary, he adopted several policy changes in 2009 on the advice of a sanitation expert. *See supra* part IV.A.2.b. Plaintiff has provided no evidence that, at the time he was held at NCP in 2010 and 2011, the prison's MRSA precautions were "so likely to result in the violation of constitutional rights" that Buskirk would have been deliberately indifferent to the need for "more or different" policies. *Harris*, 489 U.S. at 390; *see Loch v. Cty. of Bucks*, No. 03-cv-4833, 2006 WL 2559296, at *5 (E.D. Pa. Sept. 1, 2006) (holding that plaintiff's MRSA-related *Monell* claim failed in light of the "remedial steps" taken by defendants).

Edwards's testimony regarding the prison's failure to enforce its MRSA protocols by not providing gloves and not timely disposing of his sheets is insufficient to support his *Monell* claim. *See* Edwards Dep. at 124:15–23, 125:1–2. As noted above, plaintiff has not provided evidence of a causal link between these allegations and any constitutional injury. Accordingly, the Northampton defendants' Motion for Summary Judgment is granted as to the conditions of confinement *Monell* claim asserted against Northampton County.

### 5.      Claims Against Remaining Northampton Defendants

The Court grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claims asserted against the remaining Northampton defendants—Northampton County Council Members 1–9, Northampton County Executive, and Northampton County Prison. Counsel for plaintiff consented to the dismissal of the claims against these defendants. Oral Arg. Tr. at 48:5–20.

(a)   *Northampton County Council Members 1–9*. Plaintiff has failed to identify Northampton County Council Members 1–9 after a reasonable period of discovery. *Millbrook v.*

15

*United States*, 8 F. Supp. 3d 601, 609 (M.D. Pa. 2014). Furthermore, plaintiff has not presented any evidence that any such defendants acted with deliberate indifference. Specifically, Edwards never interacted with any members of the Northampton County Council. Edwards Dep. 60:17–19.  Accordingly, the Court grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claims asserted against Northampton County Council Members 1–9.

(b) *Northampton County Executive.* Plaintiff has not identified the Northampton County Executive, nor is there any evidence of record demonstrating that the person occupying that position acted with deliberate indifference. Specifically, Edwards never contacted the Northampton County Executive. Edwards Dep. 60:20–61:1. Accordingly, the Court grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claims asserted against the Northampton County Executive.

(c) *Northampton County Prison.* "In the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, No.06-cv-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). Accordingly, the Court grants the Northampton defendants' Motion for Summary Judgment as to the conditions of confinement claims asserted against NCP.

## B.  FAILURE TO PROVIDE MEDICAL TREATMENT CLAIMS

Plaintiff claims that he was deprived of medical treatment for his MRSA infection in violation of his constitutional rights. For the reasons that follow, the Court grants the Motions for Summary Judgment as to those claims. As counsel for plaintiff stated at oral argument, "I consulted an expert about whether I could demonstrate that there was deliberate lack of care on

the part of PrimeCare and the expert told me that there was not. From the records that he

examined, he could not say that . . . ." Oral Arg. Tr. at 41:24–42:3, 52:12–13. There is no

evidence of record that any medical defendant's treatment demonstrated deliberate indifference

to plaintiff's serious medical needs.

### 1.      Legal Standard

In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to a prisoner's

serious illness or injury constitutes cruel and unusual punishment in violation of the Eighth

Amendment. 429 U.S. 97 (1976). "In order to sustain a constitutional claim, a prisoner must

make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and

(2) a 'subjective' showing that the prison official acted with a sufficiently culpable state of

mind." *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011). A prison official acts with a

sufficiently culpable state of mind when the official acts with deliberate indifference. *Estelle*,

429 U.S. at 104–05.

### 2.      Claims Against Defendants Jennifer Mroz, P.A., and Nancy Cunningham, R.N.

There is insufficient evidence of record for a reasonable jury to conclude that defendants

Mroz and Cunningham acted with deliberate indifference to plaintiff's serious medical need.

Accordingly, the medical defendants' Motion for Summary Judgment is granted as to the

deprivation of medical care claims asserted against Mroz and Cunningham.

The gravamen of Edwards's claim is that his medical care was repeatedly terminated

before his infection healed, out of reckless disregard for his serious medical needs. Crucial to his

claim are three time periods in which he did not receive daily bandage changes and antibiotics:

(1) between October 30, 2010 and November 14, 2010, (2) between April 22, 2011 and April 25,

2011; and (3) between April 28, 2011 and May 13, 2011. *See* Medical Defs.' Statement of

Undisputed Facts ¶¶ 35–37, 73–75, 76–78. Edwards alleges that Mroz is responsible for these lapses. *See, e.g.*, Medical Defs.' Br. Ex. G, at 20; Medical Defs.' Statement of Undisputed Facts ¶ 76; Edwards Dep. 117:5–7. Edwards also stated in two letters to Buskirk that a nurse named "Nancy" (presumably defendant Nancy Cunningham, R.N.) decided to terminate his care. Letter dated November 17, 2010, Northampton Defs.' Br. Ex. F; Letter dated May 3, 2011, Northampton Defs.' Br. Ex. A-6.

The undisputed record reveals that the medical defendants tailored Edwards's treatment to the symptoms he was displaying at the time, pursuant to their professional judgment. For example, Mroz noted that the wound was "resolving" on October 25, 2010, shortly before medical isolation was discontinued on October 28, 2010. Medical Defs.' Br. Ex. G, at 23. On April 7, 2011, before the order for dressing changes expired on April 22, Mroz noted "excellent healing." *Id.* at 19. And on April 28, 2011, Mroz noted "excellent healing very small area of concern, no sign of infection . . . " *Id.* These notes in the record are corroborated by Edwards, who conceded in his deposition that the treatment resulted in improvement in his condition (although not complete healing). Edwards Dep. at 118:9 ("[A]t first it seemed to be working . . . ."); Letter to Buskirk dated May 3, 2011, Northampton Defs.' Br. Ex. A-6 (stating that the antibiotics have "been working so far"). When it became apparent that Edwards's infection resurfaced, the medical team promptly followed up with additional tests and treatment. *See, e.g.*, Edwards Dep. at 122:11–12 ("[T]hey put me on three or four, five different antibiotics . . . .").

Defendants were "actively engaged in efforts to alleviate [plaintiff's] pain, and to diagnose and to treat his condition." *Gallo*, 363 F. App'x at 173. For example, Mroz noted on March 7, 2011 that Edwards's wound did not appear to be improving, and on March 11 ordered

daily Doxycycline to be added to his medications. Medical Defs.' Statement of Undisputed Facts ¶¶ 65, 67. On March 18, 2011, after adjusting Edwards's treatment, Mroz noted that the wound was closed and resolving. *Id.* ¶ 69; *see also id.* ¶ 97 (noting that, on June 24, 2011, Mroz "ordered medications including Ultram, Clindamycin and Bactrim, requested x-rays, and moved Plaintiff to the medical unit"). As confirmed by counsel for plaintiff at oral argument, the actions of Mroz and Cunningham did not amount to deliberate indifference. Oral Arg. Tr. at 41: 24–42:3, 52:12–13.

Furthermore, plaintiff has not demonstrated that the alleged lapses—interspersed over the course of almost one year of daily care—caused recurrences of Edwards's MRSA infection. Expert testimony was required to do so, and none was presented. *See Mitchell v. Gershen*, 466 F. App'x 84, 87 (3d Cir. 2011) (holding that expert testimony was required in a MRSA-related case for plaintiff to survive summary judgment).

The Court concludes that there is insufficient evidence of record for a reasonable jury to determine that Mroz or Cunningham was deliberately indifferent to Edwards's serious medical condition. Accordingly, the medical defendants' Motion for Summary Judgment is granted as to the deprivation of medical care claims asserted against Mroz and Cunningham.

### 3.       Claim Against Defendant Victoria Gessner, M.D.

The medical defendants' Motion for Summary Judgment is granted as to defendant Gessner because there is insufficient evidence of record that she recklessly disregarded plaintiff's serious medical condition. *See* Oral Arg. Tr. at 52: 4–6 (counsel for plaintiff stating that there is "no evidence I concede of . . . deliberate indifference.").

The record reveals that Gessner was responsive to Edwards's medical needs. Gessner examined him seven times, and there is no evidence that more was required. Medical Defs.'

Statement of Undisputed Facts ¶¶ 52, 56, 60, 79, 87, 122, 147. During the times she saw plaintiff, Gessner put him on "different antibiotics" when the previous medications did not cure the infection. Edwards Dep. 122:3–12. Gessner also referred Edwards to an outside doctor and, after the surgery, referred him to the Bethlehem Infectious Diseases Associates. Gessner Dep. 11:17–18; Medical Defs.' Statement of Undisputed Facts ¶¶ 101, 126, 140, 150. Edwards alleges that Gessner took unnecessary x-rays and refused to refer him to outside medical help at an earlier date. Edwards Dep. at 121:23–25, 122:1–12. At most, this is a "[m]ere disagreement[ ] between the prisoner and the treating physician over medical treatment," which "do[es] not rise to the level of deliberate indifference." *Stewart*, 358 F. App'x at 296.

The Court concludes that there is insufficient evidence of record for a reasonable jury to determine that Gessner was deliberately indifferent to Edwards's serious medical condition. Accordingly, the medical defendants' Motion for Summary Judgment is granted as to the deprivation of medical care claim asserted against Gessner.

### 4.    Claims Against Other Individual Medical Defendants

The medical defendants' Motion for Summary Judgment is granted as to the remaining medical staff, Theresa Nagle, M.A., Emilia Caputo, R.N., Jennifer Keller, R.N., because there is no evidence of record that they recklessly disregarded plaintiff's serious medical condition. *See* Oral Arg. Tr. at 51:6–7 (counsel for plaintiff stating "I must concede that [the evidence] doesn't rise to the level of deliberate indifference.").

Nagle and Keller were not mentioned by name in Edwards's deposition, nor is there any other evidence of record to substantiate a claim of deliberate indifference against them. Emilia Caputo (misidentified as "Amelia Cuputo" in Edwards's deposition) is only mentioned once in the context of a conversation she had with Bateman, in which she explains why the medical

department terminated Edwards's care. Edwards Dep. 57:1–58:4. There is no evidence of record that Caputo played any role in treating Edwards or supervising the medical decisions of those who did. Accordingly, the medical defendants' Motion for Summary Judgment is granted as to the claims asserted against defendants Nagle, Caputo, and Keller.

### 5.        Claim Against PrimeCare

The medical defendants' Motion for Summary Judgment as to PrimeCare is granted because there is no evidence of record that PrimeCare maintains a policy or custom of inadequately treating MRSA patients.

"A private health care provider acting under color of state law . . . can be liable under § 1983 for Eighth Amendment violations stemming from inadequate medical treatment of prisoners . . . based on some policy, practice, or custom within the institution that caused the injury." *Johnson v. Stempler*, No. 00-cv-711, 2007 WL 984454, at *4 (E.D. Pa. Mar. 27, 2007).

The evidence of record does not reveal any policy or custom to deprive prisoners of adequate healthcare in violation of their constitutional rights. There are no examples in the record of PrimeCare or its employees responding deficiently to other inmates. *Cf. Johnson*, 2007 WL 984454, at *4 (holding that plaintiff "created a genuine issue of material fact by submitting affidavits from other inmates who also claimed to have experienced delays in receiving medical treatment"). There is no evidence of record that PrimeCare provided inadequate MRSA treatment as a matter of custom or policy. *See Tapp v. Brazill*, No. 11-cv-677, 2011 WL 6181215, at *5 (E.D. Pa. Dec. 13, 2011).

Accordingly, the medical defendants' Motion for Summary Judgment is granted as to the claim asserted against PrimeCare.

### 6.      Medical Claims Against the Northampton Defendants

Finally, Edwards claims that the Northampton defendants failed to appropriately respond to his repeated requests for medical treatment. The Court grants the Northampton defendants' Motion for Summary Judgment as to the failure-to-treat claims.

Typically, a non-medical prison official will not be liable for medical claims if the official was "justified in believing" that the inmate was being cared for "in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "[N]on-medical prison officials are generally justified in relying on the expertise and care of prison medical providers." *Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

There is no evidence of deliberate indifference with respect to Edwards's healthcare. Under the circumstances, Buskirk and Bateman acted appropriately in referring Edwards's complaints to medical professionals. *See, e.g.*, *Tyrrell v. Dauphin Cty. Prison*, No. 14-cv-2306, 2015 WL 5553753, at *6 (M.D. Pa. Sept. 18, 2015); Medical Defs. Br. Ex. L (Buskirk forwarding Edwards's grievance to the medical department); Edwards Dep. at 57:1–4 (stating that Bateman followed up on Edwards's complaint with Emilia Caputo). And, as noted above, the Northampton defendants' Motion for Summary Judgment as to defendants Northampton County Council Members 1–9, Northampton County Executive, and Northampton County Prison are granted for the reasons set forth in Part IV.A.5.

## V.      CONCLUSION

For the forgoing reasons, the Northampton defendants' and medical defendants' Motions for Summary Judgment are granted. An appropriate order follows.